[Civ. No. 18007.   Second Dist., Div. Two.   Mar. 19, 1951.]

CHARLES W. KRECK, Plaintiff and Respondent, v. ROY S. BRUNDIGE, Defendant and Respondent; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., Appellant.

G. L. Berrey and William Horace Sinclair for Appellant.

Harrison Weil for Plaintiff and Respondent.

WILSON, J.—By this action for declaratory relief plaintiff seeks an adjudication of his rights and those of defendants under an ''Agreement to Advance Moneys'' executed by plaintiff and defendant Brundige and a ''Contract of Guaranty'' executed by plaintiff, Brundige and Arthur Charles Chester. From a judgment in favor of plaintiff, defendant Bank of America as executor of the last will and testament of Arthur Charles Chester, deceased, has appealed. No appeal has been taken by defendant Brundige.

Brundige is the inventor of a process used in connection with the manufacture of plywood and for laminated

structures. In January, 1945, he assigned to Chester a one-half interest in his invention and the patent applications thereon pursuant to an agreement entered into between them in August, 1944, whereby Chester advanced moneys to Brundige to finance him in applying for and obtaining the patents. On January 16, 1946, Brundige and Chester executed an "Option to Purchase an Interest in an Invention and Patent Application Therefor" wherein Chester agreed to resell to Brundige his one-half interest for $19,000. The option provided that it was to be exercised within 90 days from date by payment of $9,000 cash, the balance to be paid within five years with interest at the rate of 6 per cent. The down payment represented the return of Chester's investment. If the option were exercised, Chester agreed to execute an assignment to Brundige to be held in trust until the balance of the purchase price had been paid in full.

Prior to the expiration of the option agreement Brundige succeeded in interesting plaintiff in financing him in the further development of his invention. Accordingly, on March 27, 1946, plaintiff and Brundige entered into an "Agreement to Advance Moneys" and on April 9, 1946, plaintiff, Brundige and Chester executed a "Contract of Guaranty" in the provisions of which was included a modification of the option agreement between Brundige and Chester.

## Agreement To Advance Moneys

The agreement to advance moneys provides that plaintiff is to furnish funds from time to time to Brundige upon his request and in such sums as he might require up to a total amount of $50,000; an initial advance of $19,500 shall be deposited in a commercial account in the joint names of plaintiff and Brundige; of that sum $9,000 shall be paid immediately to Chester as the initial payment for his one-half interest under the option agreement. The purposes for which the funds were to be used are specified, one of which was to exercise the option to purchase the one-half interest of Chester. In consideration for the advance plaintiff was to receive "an undivided one-half interest in and to the considerations, returns and royalties from licensing said inventions, or the sale thereof . . ." It was also agreed that plaintiff could withdraw from the agreement at any time upon giving thirty days' notice in writing to Brundige and paying the sum of $1,000. In the event plaintiff should ex-

ercise his right of withdrawal, Brundige agreed to assign to him "an undivided interest in and to any royalties, avails, moneys that may come out of any license agreements or sales, which shall represent a proportionate interest in said royalties or payments equal to the amount Second Party [Kreck] has advanced up to the time of his withdrawal and written notice, based upon a valuation of $100,000. . . ."

The sum of $9,000 was paid to Chester who thereupon assigned his one-half interest in the invention and the patent applications to Brundige.

After plaintiff had advanced approximately $31,000 under the agreement he elected to withdraw and tendered $1,000 to Brundige, demanding an assignment in accordance with the contract. Brundige tendered plaintiff an assignment of a 31.1 per cent interest in and to "any royalties, avails, moneys and considerations that may come out of any license agreements or sales under or on account" of the agreement of March 27, 1946. Plaintiff objected to this assignment, deeming himself entitled to an interest in the patent or patents. The trial court found that the assignment tendered was in compliance with the contract and the issues between plaintiff and Brundige are not involved in this appeal.

### GUARANTY AGREEMENT

The guaranty agreement executed by plaintiff, Brundige and Chester recites the assignment by Brundige to Chester of an undivided one-half interest in his invention and the patent applications, and the option agreement entered into between Brundige and Chester providing for the resale of Chester's interest to Brundige; that it is the intention of plaintiff and Brundige to enter into an agreement relating to the invention which would be mutually beneficial, "more particularly so if the said Arthur Charles Chester may be persuaded to and become willing to modify in certain particulars that certain option to purchase executed on January 16, 1946, . . ."; that "to the end that said Second [Brundige] and Third [Kreck] Parties may mutually and severally benefit as between themselves by a modification of said Option to Purchase" Brundige and Kreck specifically request that Chester release Brundige from the unconditional obligation to pay the sum of $10,000 in excess of the down payment of $9,000, and to make such payment conditional on the happening or occurrence of certain events and request Chester to eliminate all interest charges; that should Chester accede

to such request he will suffer a prejudice as a result of his forbearance and Kreck will have benefit conferred upon him.

The parties agreed: "First: Third Party [Kreck] hereby agrees that, as an inducement to First Party [Chester] to eliminate the provision for charging interest on any portion of the purchase price not included in the original down payment required under said Option to Purchase, and by making the payment of the additional Ten Thousand Dollars ($10,-000.) of the total sale price of Nineteen Thousand Dollars ($19,000.), instead of unconditional in order to receive the assignment of interest from First Party, as provided in said agreement executed January 16, 1946, to be conditional on the receipt by either Second Party [Brundige] or by Third Party of any benefits, royalty payment, or other consideration arising from the ownership, transfer, conveyance, sale or gift of any right, title or interest of either said Second Party or said Third Party in and to said Patent and Application for Patent, or to any benefits accruing therefrom, and that Third Party will and he hereby does guarantee payment to first party of any and all sums received by either Second Party or by Third Party arising or accruing as a result of the ownership of or interest in said Patent and Patent Application, up to and including the sum of Ten Thousand Dollars ($10,-000.) representing the unpaid portion of the said Purchase and Sale price of the said interest of First Party in and to said Patent and Patent Application, as more fully set forth in said Exhibit 'A'; this guaranty is hereby made by Third Party regardless of the ability or willingness of Second Party to pay, and Third Party hereby waives notice to him of any default by Second Party. Third Party further agrees that any gift, conveyance, transfer, judgment, lien, execution or other instrument having the effect of extinguishing the right, title, ownership or interest of either Second or Third Party in and to said Patent, Application for Patent, or benefits receivable therefrom to either Second or Third Parties, or any operation of law which shall cause such an extinction of interest, shall forthwith constitute an obligation on the Third Party to pay to First Party the said Ten Thousand Dollars. . . ."

Similar language is used under the heading "Intent" wherein the parties agree that instead of the $10,000 payment being conditioned on its being made to Chester before the assignment of his interest to Brundige, it was con-

ditioned on the receipt by either Brundige or Kreck of any "benefits, royalty payment, or other consideration arising from the ownership, transfer, conveyance, sale or gift of any right, title or interest" by either Brundige or Kreck in the invention and application for patent or to any benefits accruing therefrom. Brundige agreed, as a consideration to Chester for executing the agreement, to apply on the unpaid portion of the amount due Chester any and all sums, up to $10,000, received by Brundige arising from or accruing as a result of his ownership or interest in the invention and application for patent.

It is appellant's contention that the following findings and conclusions of the trial court are contrary to law and the evidence: "That the defendant Bank of America National Trust and Savings Association . . . is not entitled to the payment of $10,000.00 from either plaintiff or defendant Roy S. Brundige for the reason that the conditions under which the same may become payable as provided in said 'Guaranty Agreement' do not exist and have not occurred. That it was neither the intention of the parties nor the effect of the 'Guaranty Agreement' that said $10,000.00 was to be paid from any funds advanced by the plaintiff under the 'Agreement to Advance Moneys' for the purpose of obtaining patents or for the exploitation of the invention; that all the sums heretofore advanced or paid by plaintiff to defendant Roy S. Brundige were for such purposes."

Appellant maintains that since Brundige received in excess of $10,000 from plaintiff by reason of his ownership and interest in his invention and patent applications in return for which plaintiff received a 31.1 per cent interest, judgment should be entered in its favor against plaintiff and Brundige in the amount of $10,000; that the guaranty agreement is clear and unambiguous; that Chester did not know the provisions of the financing agreement between plaintiff and Brundige and that agreement cannot be used to change the meaning or to limit the clear and unambiguous provisions of the guaranty agreement.

Contrary to appellant's contention, the language of the guaranty agreement specifying the contingency upon which the $10,000 shall become due and payable is not so clear and unambiguous as to make the intention of the parties manifest. It becomes necessary, therefore, in construing the contract to consider the circumstances surrounding its execution, including the execution of the agreement to ad-

vance moneys. The two instruments must be interpreted together relating as they do to the same subject. When so considered it becomes apparent that it was the intention of the parties that the $10,000 was to be paid from anticipated profits and not out of any sums which plaintiff was to advance to Brundige to finance him in the development of his invention.

Chester had advanced $9,000 to Brundige for which he received a one-half interest in the invention and patent applications. Brundige was in need of additional financing. Chester agreed to resell to Brundige his interest for $19,000, of which amount $9,000 was to be paid upon the exercise of the option and the balance to be paid within five years, with interest. Brundige then succeeded in interesting plaintiff in providing the funds he required. Plaintiff agreed to advance up to $50,000 provided Chester could be induced to modify his option agreement. As the result of the negotiations, plaintiff executed the agreement to advance moneys in which it was agreed that plaintiff would make an initial advance of $17,500, out of which Chester was to be paid $9,000 immediately. The three parties then executed the guaranty agreement in which Chester agreed that the payment of $10,000 instead of being unconditional—instead of being paid within five years with interest—was to be conditioned upon the receipt by either plaintiff or Brundige of any benefits, royalty payment or other consideration. The agreement recites that plaintiff and Brundige are entering into an agreement relating to the invention which will be mutually beneficial. While Chester may not have known the precise terms of such agreement it is inconceivable that he did not know plaintiff was going to furnish financial aid to Brundige and the reason why he, Chester, was asked to modify his option agreement.

Had Chester expected to receive his full $19,000 out of the first moneys plaintiff advanced there would have been no forbearance upon his part nor any need for him to agree to modify his option. Since the guaranty agreement refers to Kreck's interest in the invention, Chester must have known that Kreck either had acquired or would acquire such interest and had the parties intended that moneys advanced or paid by Kreck to Brundige for that interest was to go first to Chester, the agreement would have so provided. However, the guaranty agreement makes no reference to any

money received or to be received by Brundige from plaintiff but the $10,000 payment is conditioned upon sums which may be received by either Brundige or plaintiff. The inference is that the money is to be received from third persons and the parties must have intended by that language that out of any profits which might be received by either Brundige or plaintiff, Chester was to receive the first $10,000.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied April 4, 1951, and appellant's petition for a hearing by the Supreme Court was denied May 17, 1951.